# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

——————

No. 15-30162

——————

United States Court of Appeals
Fifth Circuit

**FILED**

March 3, 2017

Lyle W. Cayce
Clerk

BOARD OF COMMISSIONERS OF THE SOUTHEAST LOUISIANA
FLOOD PROTECTION AUTHORITY – EAST; ORLEANS LEVEE
DISTRICT; LAKE BORGNE BASIN LEVEE DISTRICT; EAST JEFFERSON
LEVEE DISTRICT,

Plaintiffs–Appellants,

v.

TENNESSEE GAS PIPELINE COMPANY, L.L.C.; ALTA MESA SERVICES,
L.P.; ANADARKO E&P ONSHORE, L.L.C.; APACHE CORPORATION;
ATLANTIC RICHFIELD COMPANY; BEPCO, L.P.; BOARDWALK
PIPELINE PARTNERS, L.P.; BOPCO, L.P.; BP AMERICA PRODUCTION
COMPANY; BP OIL PIPELINE COMPANY; CALLON OFFSHORE
PRODUCTION, INCORPORATED; CALLON PETROLEUM COMPANY;
CASKIDS OPERATING COMPANY; CENTERPOINT ENERGY
RESOURCES CORPORATION; CHEVRON PIPELINE COMPANY;
CHEVRON USA, INCORPORATED; CLAYTON WILLIAMS ENERGY,
INCORPORATED; CLOVELLY OIL COMPANY, L.L.C.; COASTAL
EXPLORATION AND PRODUCTION, L.L.C.; COLLINS PIPELINE
COMPANY; CONOCOPHILLIPS COMPANY; CONTINENTAL OIL
COMPANY; COX OPERATING, L.L.C.; CRAWFORD HUGHES
OPERATING COMPANY; DALLAS EXPLORATION, INCORPORATED;
DAVIS OIL COMPANY; DEVON ENERGY PRODUCTION COMPANY, L.P.;
ENERGEN RESOURCES CORPORATION; ENTERPRISE INTRASTATE,
L.L.C.; EOG RESOURCES, INCORPORATED; EP ENERGY
MANAGEMENT, L.L.C.; EXXON MOBIL CORPORATION; EXXON MOBIL
PIPELINE COMPANY; FLASH GAS & OIL NORTHEAST,
INCORPORATED; GRAHAM ROYALTY, LIMITED; GREKA AM,
INCORPORATED; GULF PRODUCTION COMPANY, INCORPORATED;
GULF SOUTH PIPELINE COMPANY, L.P.; HELIS ENERGY, L.L.C.;
HELIS OIL & GAS COMPANY, L.L.C.; HESS CORPORATION, A Delaware
Corporation; HILLIARD OIL & GAS, INCORPORATED; HKN,
INCORPORATED; INTEGRATED EXPLORATION & PRODUCTION,
L.L.C.; J.C. TRAHAN DRILLING CONTRACTOR, INCORPORATED; J.M.

No. 15-30162

HUBER CORPORATION; KENMORE OIL COMPANY, INCORPORATED; KEWANEE INDUSTRIES, INCORPORATED; KOCH EXPLORATION COMPANY, L.L.C.; KOCH INDUSTRIES, INCORPORATED; LIBERTY OIL ; GAS CORPORATION; LLOG EXPLORATION COMPANY; MANTI OPERATING COMPANY; MARATHON OIL COMPANY; MOEM PIPELINE, L.L.C.; MOSBACHER ENERGY COMPANY; NATURAL RESOURCES CORPORATION OF TEXAS; NEWFIELD EXPLORATION GULF COAST, L.L.C.; NOBLE ENERGY, INCORPORATED; O'MEARA, L.L.C.; P. R. RUTHERFORD; PLACID OIL COMPANY; PLAINS PIPELINE, L.P.; REPUBLIC MINERAL CORPORATION; RIPCO, L.L.C.; ROZEL OPERATING COMPANY; MURPHY EXPLORATION & PRODUCTION COMPANY, USA; SHELL OIL COMPANY; SOUTHERN NATURAL GAS COMPANY, L.L.C.; SUN OIL COMPANY; SUNDOWN ENERGY, L.P.; UNION OIL COMPANY OF CALIFORNIA; WHITING OIL & GAS CORPORATION; WILLIAMS EXPLORATION COMPANY; YUMA EXPLORATION AND PRODUCTION COMPANY, INCORPORATED; MERIDIAN RESOURCE & EXPLORATION, L.L.C.; PICKENS COMPANY, INCORPORATED; ESTATE OF WILLIAM G. HELIS; LOUISIANA LAND AND EXPLORATION COMPANY, L.L.C. MARYLAND; KAISER-FRANCIS OIL COMPANY; BP PIPELINES NORTH AMERICA, INCORPORATED; VINTAGE PETROLEUM, L.L.C., Delaware; ENLINK LIG, L.L.C.,

Defendants–Appellees.

———————————

Appeal from the United States District Court
for the Eastern District of Louisiana

———————————

Before STEWART, Chief Judge, and OWEN and COSTA, Circuit Judges.

PRISCILLA R. OWEN, Circuit Judge:

The Board of Commissioners of the Southeast Louisiana Flood Protection Authority–East filed a lawsuit in Louisiana state court against various companies involved in the exploration for and production of oil reserves off the southern coast of the United States. The Board alleged that Defendants' exploration activities caused infrastructural and ecological damage to coastal

2

No. 15-30162

lands overseen by the Board that increased the risk of flooding due to storm surges and necessitated costly flood protection measures. Defendants removed the case to federal court, and the district court denied the Board's motion to remand, on the ground that the Board's claims necessarily raise a federal issue. Defendants also moved to dismiss the case for failure to state a claim on which relief can be granted, and the district court granted the motion. We affirm.

## I

In July 2013, the Board of Commissioners of the Southeast Louisiana Flood Protection Authority–East (the Board) filed a lawsuit in Louisiana state court against ninety-seven entities (the Defendants) involved in the exploration for and production of oil reserves off the southern coast of the United States. The Board, whose purpose is "regional coordination of flood protection,"[1] alleges that since the 1930s, coastal landscapes that serve as a "first line of defense" against flooding (the Buffer Zone) have been suffering from rapid land loss. The Board alleges that replacement of land in the Buffer Zone with water threatens the existing levee system and imperils coastal communities. It further asserts that Defendants' oil and gas activities— primarily the dredging of an extensive network of canals to facilitate access to oil and gas wells—has caused "direct land loss and increased erosion and submergence in the Buffer Zone, resulting in increased storm surge risk." Attached to the complaint was a list of Defendants' names, agents, and addresses; a map depicting the levee districts under the Board's purview; a list of the names and location information of wells operated by Defendants; a list of the locations in the relevant levee districts subject to dredging permits and the permittees benefitting thereunder; and a list of the locations and grantees of rights of way in the relevant levee districts.

---

[1] LA. STAT. ANN. § 38:330.1(F)(2)(a).

No. 15-30162

The Board's asserted bases for recovery from Defendants include negligence, strict liability, natural servitude of drain, public nuisance, private nuisance, and breach of contract as to third-party beneficiaries. The Board describes the "highly costly but necessary remedial measures" that it has undertaken or will undertake to protect against the increased storm surge risk. These measures include "abatement and restoration of the coastal land loss at issue," including backfilling and revegetating each canal dredged by Defendants; the joint state-federal Hurricane and Storm Damage Risk Reduction System, some of the cost of which has been borne by the Board; investigation and remediation of defects in the local levee systems to comply with relevant certification standards; and "additional flood protection expenses," including the construction of "safe houses" for use by employees during dangerous flooding conditions.

The complaint describes "a longstanding and extensive regulatory framework under both federal and state law" that protects against the effects of dredging activities and establishes the legal duties by which Defendants purportedly are bound. It enumerates four main components of this framework, including the Rivers and Harbors Act of 1899 (RHA);[2] the Clean Water Act of 1972 (CWA);[3] "[r]egulations related to rights-of-way granted across state-owned lands and water bottoms administered by the Louisiana Office of State Lands"; and the Coastal Zone Management Act of 1972 (CZMA)[4] "and related Louisiana coastal zone regulations bearing directly on oil and gas activities." None of the individual claims relies on a cause of action created under federal law, and the negligence, strict liability, and natural servitude claims explicitly rely on state law causes of action.

---

[2] 33 U.S.C. §§ 401-467.
[3] 33 U.S.C. §§ 1251-1388.
[4] 16 U.S.C. §§ 1451-1466.

4

No. 15-30162

The Board seeks "[a]ll damages as are just and reasonable under the circumstances," as well as injunctive relief requiring the backfilling and revegetating of canals, "wetlands creation, reef creation, land bridge construction, hydrologic restoration, shoreline protection, structural protection, bank stabilization, and ridge restoration."

Defendants removed the case to federal court, asserting five separate grounds for federal jurisdiction. The Board moved to remand, and the district court denied the motion, concluding that the Board's state law claims "necessarily raise a federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing the congressionally approved balance of federal and state judicial responsibilities." Defendants moved to dismiss the case pursuant to Federal Rule of Civil Procedure 12(b)(6) as preempted by federal law and barred under state law. The district court granted the motion with respect to all of the Board's claims, concluding that none of the Board's stated grounds for relief constituted a claim upon which relief could be granted under state law. The Board appealed.

## II

We review an order denying remand to state court de novo.[5] A federal court may exercise federal question jurisdiction over any civil action that "arises under the federal constitution, statutes, or treaties."[6] A federal question exists only where "a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law."[7] However, "[t]he fact that a substantial federal question is necessary to the

---

[5] *See Davoodi v. Austin Indep. Sch. Dist.*, 755 F.3d 307, 309 (5th Cir. 2014).

[6] *Energy Mgmt. Servs., LLC v. City of Alexandria*, 739 F.3d 255, 258-59 (5th Cir. 2014).

[7] *Singh v. Duane Morris LLP*, 538 F.3d 334, 337-38 (5th Cir. 2008) (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 27-28 (1983)).

resolution of a state-law claim is not sufficient to permit federal jurisdiction."[8] Only in a "'special and small category' of cases" will federal jurisdiction exist when state law creates the cause of action.[9] That limited category of federal jurisdiction only exists where "(1) resolving a federal issue is necessary to resolution of the state-law claim; (2) the federal issue is actually disputed; (3) the federal issue is substantial; and (4) federal jurisdiction will not disturb the balance of federal and state judicial responsibilities."[10] "[I]f a plaintiff files suit in state court alleging both federal and state claims arising out of the same controversy, the entire action may be removed to federal court."[11]

The district court concluded that three of the Board's claims necessarily raise federal issues: the negligence claim, which purportedly draws its requisite standard of care from three federal statutes; the nuisance claims, which rely on that same standard of care; and the third-party breach of contract claim, which purportedly is based on permits issued pursuant to federal law.

### A

The Board argues that the district court was incorrect to conclude that the nuisance and negligence claims necessarily raise a federal issue, because although the state law claims "*could* turn to federal law for support, federal law is not *necessary* for their resolution." It points to this court's holding in *MSOF Corp. v. Exxon Corp.* that an allegation that a facility was maintained "in violation of federal regulations *as well as* in violation of state and local regulations" was not enough for the action to arise under federal law.[12]

---

[8] *Id.* at 338.

[9] *Gunn v. Minton*, 133 S. Ct. 1059, 1064 (2013) (quoting *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006)).

[10] *Singh*, 538 F.3d at 338.

[11] *Halmekangas v. State Farm Fire & Cas. Co.*, 603 F.3d 290, 293 (5th Cir. 2010).

[12] 295 F.3d 485, 490 (5th Cir. 2002).

Defendants dispute the Board's contention that the negligence or nuisance claims could be resolved solely as a matter of state law; they note that although the negligence claim draws its cause of action from a Louisiana statute, the "sole basis" for any standard of care is found in the federal regulatory scheme. Unlike in *MSOF*, the Board is seeking a remedy—the backfilling of canals—that could not be required under any state law-based conception of negligence, and accordingly the claim of necessity has a "federal substance." Similarly, Defendants argue that the nuisance claims posit an obligation not to make "unauthorized" changes or alterations to levee systems—an imperative that they argue could only exist under federal law.

The Board's negligence claim in fact requests relief for multiple distinct injuries and refers to multiple sources of law that might establish a duty of care, and it is not the case that just because some of these sources are drawn from state law and some from federal law that the two sources are redundant and therefore "alternative." The claims for negligence and strict liability in *MSOF* arose out of the alleged contamination of plaintiffs' land with toxic chemicals, which undisputedly gave rise to a cause of action under state law.[13] Here, however, Defendants correctly point out that the Board's complaint draws on federal law as the exclusive basis for holding Defendants liable for some of their actions, including for the "unauthorized alteration" of federal levee systems and for dredging and modifying lands away from their "natural state." Unless Louisiana state law requires persons engaged in oil and gas activities to restore dredged or modified areas to their "natural state" to the identical extent that the CWA purportedly does, then a court would not be able to establish the magnitude of any potential liability without construing that Act. The same is true of the alleged obligation not to alter levee systems built

---

[13] *Id.*

by the United States, which the complaint draws from the RHA. The Board points out that Louisiana law sets forth apparently similar requirements, such as the provision stating that "[m]ineral exploration and production sites shall be cleared, revegetated, detoxified, and otherwise restored as near as practicable to their original condition upon termination of operations to the maximum extent practicable."[14] But the "maximum extent practicable" in turn is defined as a regulatory determination that entails "a systematic consideration of all pertinent information regarding the use, the site and the impacts of the use . . . and a balancing of their relative significance."[15] No Louisiana court has used this or any related provision as the basis for the tort liability that the Board would need to establish, and the Louisiana Supreme Court has explicitly rejected the prospect that a statutory obligation of "reasonably prudent conduct" could require oil and gas lessees to restore the surface of dredged land.[16]

The absence of any state law grounding for the duty that the Board would need to establish for the Defendants to be liable means that that duty would have to be drawn from federal law. Supreme Court precedent is clear that a case arises under federal law where "the vindication of a right under state law necessarily turn[s] on some construction of federal law,"[17] and the Board's negligence and nuisance claims thus cannot be resolved without a determination whether multiple federal statutes create a duty of care that does not otherwise exist under state law.

---

[14] LA. ADMIN. CODE tit. 43, § 719(M).

[15] *Id.* § 701(H)(1).

[16] *See Terrebonne Parish Sch. Bd. v. Castex Energy, Inc.*, 893 So. 2d 789, 801 (La. 2005) ("[W]e hold that, in the absence of an express lease provision, Mineral Code article 122 does not impose an implied duty to restore the surface to its original, pre-lease condition absent proof that the lessee has exercised his rights under the lease unreasonably or excessively.").

[17] *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 9 (1983).

No. 15-30162

**B**

The Board argues that even if its claims necessarily raise federal issues, those issues are not "actually disputed." But its argument draws entirely on district court cases in which the parties did not disagree with respect to the proper interpretation of federal statutes unrelated to those raised in the Board's complaint.[18] Defendants refute this argument by pointing out that they do not concede, for example, that the RHA establishes liability for otherwise permitted activity that might have the effect of altering United States-built levee systems; that the CWA requires them to restore dredged canals to their "natural state"; or that they are required to backfill canals that they have dredged pursuant to federal permits. These are legal, not factual, questions, and the parties dispute them.

**C**

For a federal issue to give rise to federal jurisdiction, "it is not enough that the federal issue be significant to the particular parties in the immediate suit . . . . The substantiality inquiry under *Grable* looks instead to the importance of the issue to the federal system as a whole."[19] The Supreme Court has suggested that an issue can be important for many reasons: because state adjudication would "undermine 'the development of a uniform body of [federal] law'";[20] because the case presents "a nearly pure issue of law" that would have

---

[18] *See, e.g.*, *Cooper v. Int'l Paper Co.*, 912 F. Supp. 2d 1307, 1316-17 (S.D. Ala. 2012) ("The plaintiffs' complaint . . . does not place in dispute the meaning of any provisions of federal law, and [the defendant] has not shown that a state court will be called upon to do more than apply a settled federal framework to the facts of this case." (citation omitted)).

[19] *Gunn v. Minton*, 133 S. Ct. 1059, 1066 (2013); *see also Smith v. Kan. City Title & Tr. Co.*, 255 U.S. 180, 198-202 (1921) (holding substantial the question in a state-law shareholder lawsuit whether the statute pursuant to which certain federal bonds were issued was constitutionally valid).

[20] *Gunn*, 133 S. Ct. at 1067 (quoting *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 162 (1989)).

applications to other federal cases;[21] or because resolution of the issue has "broad[] significance" for the federal government.[22]    "The absence of any federal cause of action . . . [is] worth some consideration in the assessment of substantiality."[23]

The district court concluded that the substantiality requirement was met in this case, both because the relevant federal statutes plainly regulate "issues of national concern" and because the case affects "an entire industry" rather than a few parties.  Moreover, it called the lawsuit "a collateral attack on an entire regulatory scheme . . . premised on the notion that [the scheme] provides inadequate protection."  The Board disagrees and argues that it raises that regulatory scheme "to *support* the obligations created under state law."

The Board is correct that the federal regulatory scheme is only relevant to its claims insofar as the scheme provides the underlying legal basis for causes of action created by state law.  But of course Defendants dispute whether the federal scheme provides such basis at all.  The dispute between the parties does not just concern whether Defendants breached duties created by federal law; it concerns whether federal law creates such duties.  As Defendants point out, the validity of the Board's claims would require that conduct subject to an extensive federal permitting scheme is in fact subject to implicit restraints that are created by state law.[24]  The implications for the

---

[21] *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 700 (2006) (internal quotation marks omitted); *cf. Gunn*, 133 S. Ct. at 1066-67 (holding insubstantial the federal question whether patent lawyers being sued for malpractice could have succeeded in a prior federal patent suit by timely raising a particular argument, because "[n]o matter how the state courts resolve that hypothetical 'case within a case,' it w[ould] not change the real-world result of the prior federal patent litigation.  [Plaintiff's] patent w[ould] remain invalid.").

[22] *Gunn*, 133 S. Ct. at 1066.

[23] *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 318 (2005).

[24] *See* 33 U.S.C. § 404 (allowing the Secretary of the Army to grant permits "to make deposits in any tidal harbor or river of the United States beyond any harbor lines established under authority of the United States"); 33 U.S.C. § 403 (requiring federal permission to

No. 15-30162

federal regulatory scheme of the sort of holding that the Board seeks would be significant, and thus the issues are substantial.

## D

In *Singh*, we considered whether the area of law relevant to the plaintiff's claims "has traditionally been the domain of state law," and in that case we concluded that "federal law rarely interferes with the power of state authorities to regulate" that area of law.[25] The Supreme Court has held that the balance of federal and state judicial responsibilities would be disturbed by the exercise of federal jurisdiction where such exercise would "herald[] a potentially enormous shift of traditionally state cases into federal courts."[26] Here, the district court held that no such shift would arise, noting that the Board relies on federal law to establish liability and that resolution of its claims could affect coastal land management in multiple states as well as the national oil and gas market.

The Board points out that each of the three federal statutes that forms the basis of its claims contains a savings clause, which it argues supports an inference that exercising federal jurisdiction would disrupt the balance struck by Congress.[27] But as Defendants point out, these savings clauses act to preserve existing state law claims; they do not confine consideration of lawsuits based on federal law to state courts. They also argue that the relief sought by the Board would require federal approval to be implemented, and thus it cannot be that the lawsuit is a matter only of state concern.[28]

---

"excavate or fill, or in any manner to alter or modify the course, location, condition, or capacity of, any . . . canal").

[25] *Singh v. Duane Morris LLP*, 538 F.3d 334, 339 (5th Cir. 2008).

[26] *Grable*, 545 U.S. at 319.

[27] *See* 33 U.S.C. §§ 1365(e), 1416(g); 16 U.S.C. § 1456(e).

[28] *See* 33 U.S.C. § 403; 33 C.F.R. § 322.3(a).

11

No. 15-30162

In *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, the Supreme Court explicitly rejected "[a] general rule of exercising federal jurisdiction over state claims resting on federal . . . statutory violations," and it also rejected the proposition that "any . . . federal standard without a federal cause of action" is enough to support federal jurisdiction over a lawsuit.[29] However, the Court nonetheless held that federal jurisdiction was proper in the state quiet title action before it, because "it is the rare state quiet title action that involves contested issues of federal law," and thus "jurisdiction over actions like Grable's would not materially affect, or threaten to affect, the normal currents of litigation."[30]

The *Grable* Court was persuaded that "the absence of threatening structural consequences" was relevant to its inquiry, and the same logic militates in favor of federal jurisdiction here.[31] If the federal statutes at issue in this case do create duties and obligations under the laws of various states, then it might be inappropriate for federal question jurisdiction to obtain every time a state-law claim is made on that basis. But where, as here, one of the primary subjects of dispute between the parties is whether the federal laws in question may properly be interpreted to do that at all, the implications for the federal docket are less severe.[32] Relatedly, the scope and limitations of a complex federal regulatory framework are at stake in this case, and disposition of the question whether that framework may give rise to state law claims as

---

[29] 545 U.S. at 318-19.

[30] *Id.* at 319.

[31] *Id.*

[32] *See id.* at 318-19 (noting that even though "[t]he violation of federal statutes and regulations is commonly given negligence per se effect in state tort proceedings," federal jurisdiction is not always proper in such proceedings (quoting RESTATEMENT (THIRD) OF TORTS § 14, Reporter's Note, cmt. a (AM. LAW INST., Tentative Draft No. 1, 2001))).

an initial matter will ultimately have implications for the federal docket one way or the other.

## E

Because we conclude that the Board's negligence and nuisance claims necessarily raise federal issues sufficient to justify federal jurisdiction, we do not reach the question whether the third-party breach of contract claim also does so. We also do not reach the question whether maritime jurisdiction provides an independent basis for federal jurisdiction in this case.

## III

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[33] "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[34]

## A

To state a claim for negligence under Louisiana law, the Board must establish, *inter alia*, that Defendants "had a duty to conform [their] conduct to a specific standard."[35] The extent of a duty is "a question of policy as to whether [a] particular risk falls within the scope of the duty."[36] A court must determine "whether the enunciated rule or principle of law extends to or is intended to protect *this plaintiff* from *this type of harm* arising in *this*

---

[33] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[34] *Id.*

[35] *Audler v. CBC Innovis Inc.*, 519 F.3d 239, 249 (5th Cir. 2008) (quoting *Lemann v. Essen Lane Daiquiris, Inc.*, 923 So. 2d 627, 633 (La. 2006)).

[36] *Roberts v. Benoit*, 605 So. 2d 1032, 1044 (La. 1991).

*manner*."[37]   Louisiana courts consider various factors to ascertain the scope of this protection, including "whether the imposition of a duty would result in an unmanageable flow of litigation; ease of association between the plaintiff's harm and a defendant's conduct; economic, social, and moral implications on similarly situated parties; the nature of defendant's activity; the direction in which society and its institutions are evolving; and precedent."[38]

The district court held that the requirements imposed by the RHA, the CWA, and the CZMA "do not extend to the protection of [the Board]."  It stated that (1) the primary purpose of the RHA is to ensure that waterways remain navigable, and the provision therein that makes it illegal for any person to damage a levee did not impose a duty to protect the Board; (2) the CWA is meant to restore and maintain the integrity of the United States water supply, and the issuance of permits for the discharge of dredged or fill materials under it does not establish private duties; and (3) the issuance of permits licensing oil and gas exploration activities under the CZMA does not impose private duties to prevent environmental damage.  The district court also denied that Louisiana state law creates a duty of care by which the Board is bound, because in the Fifth Circuit case that arguably suggested as much, *Terrebonne Parish School Board v. Columbia Gulf Transmission Co.*,[39] at issue was whether "a direct loss of acreage . . . due to erosion" breached "[t]he duty of two specific pipeline companies to maintain canals on specific property *vis a vis* a specific lessor."

The Board argues that because the three federal statutes "set forth clear standards of care relevant to the defendants' conduct," and because the complaint points to the content of those statutes, the Board has stated a claim.

---

[37] *Id.* at 1044-45 (citation omitted).
[38] *Cormier v. T.H.E. Ins. Co.*, 745 So. 2d 1, 7 (La. 1999).
[39] 290 F.3d 303 (5th Cir. 2002).

No. 15-30162

It also points to Louisiana statutes that require coastal uses "to avoid to the maximum extent practicable" detrimental changes to sediment transport processes and coastal erosion, as well as "increases in the potential for flood, hurricane and other storm damage, or increases in the likelihood that damage will occur from such hazards."[40]

Defendants note both that the Board has not explained how the federal statutes it enumerates serve to create a duty of care under state law and that the Board does not appear to allege that Defendants have caused any actual loss, because the Board states only that Defendants' dredging activities have weakened coastal lands such that "flood protection costs" have increased. They also point to *Terrebonne Parish School Board v. Castex Energy, Inc.*, in which the Louisiana Supreme Court found no implied duty for a mineral right lessee to restore coastline, even where the lessee was obligated by statute to "develop and operate the property leased as a reasonably prudent operator for the mutual benefit of himself and his lessor."[41] Finally, they argue that the line of Louisiana Supreme Court cases suggesting that imposing liability for any indirect economic harm caused by a wrongful act "could create liability 'in an indeterminate amount for an indeterminate time to an indeterminate class'"[42] means that here, where the damaged party has incurred only additional costs

---

[40] LA. ADMIN. CODE tit. 43, § 701(G).

[41] 893 So. 2d 789, 796-97 (La. 2005); *see also Barasich v. Columbia Gulf Transmission Co.*, 467 F. Supp. 2d 676, 692 (E.D. La. 2006) ("If the Louisiana Supreme Court refused to read an implied duty to restore the surface on the facts of *Terrebonne Parish*, it would almost certainly decline to do so when remote parties seek to impose a general duty that has no basis in their relationship or controlling law.").

[42] *PPG Indus., Inc. v. Bean Dredging*, 447 So. 2d 1058, 1061 (La. 1984) (quoting *Ultramares Corp. v. Touche*, 174 N.E. 441, 444 (N.Y. 1931)); *see MAW Enters., LLC v. City of Marksville*, 149 So. 3d 210, 220 (La. 2014) (limiting damages owed by city to lessor whose lessee was denied a retail alcoholic beverage permit); *Bean Dredging*, 447 So. 2d at 1061-62 ("Because the list of possible victims and the extent of economic damages might be expanded indefinitely, the court necessarily makes a policy decision on the limitation of recovery of damages.").

15

and has not suffered any loss to property it owns, Defendants could not have been bound to protect the Board from the losses it sustained.

The district court was correct that neither federal law nor Louisiana law creates a duty that binds Defendants to protect the Board from increased flood protection costs that arise out of the coastal erosion allegedly caused by Defendants' dredging activities. Although it is true that this court "has often held that violation of a Federal law or regulation can be evidence of negligence,"[43] it has declined to do so where the "principal purpose" of the relevant statutes was not to protect the plaintiff.[44] The Supreme Court's determination that the RHA "was obviously intended to prevent obstructions in the Nation's waterways" and that "a principal beneficiary of the Act, if not the principal beneficiary, is the Government itself"[45] indicates that the Board's asserted ground for relief on the basis of the RHA—that the Act makes it unlawful to impair in any manner, *inter alia*, a levee built by the United States—may not properly be brought to bear on private parties by a municipal authority.

Similar logic applies in the context of the CWA. That the CWA, its attendant regulations, and permits issued thereunder might require Defendants to maintain canals and to mitigate the environmental impact of their dredging activities might bear some relation to the general purpose of the Act, which is "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters."[46] But with respect to the permits issued

---

[43] *Lowe v. Gen. Motors Corp.*, 624 F.2d 1373, 1379 (5th Cir. 1980).

[44] *Audler v. CBC Innovis Inc.*, 519 F.3d 239, 252 (5th Cir. 2008) (quoting *Till v. Unifirst Fed. Sav. & Loan Ass'n*, 653 F.2d 152, 159 (5th Cir. 1981)).

[45] *Wyandotte Transp. Co. v. United States*, 389 U.S. 191, 201 (1967) (holding that the United States may maintain a civil action against the owner of an allegedly negligently sunken vessel to recover government expenses incurred in removing the vessel).

[46] 33 U.S.C. § 1251(a).

## No. 15-30162

pursuant to the CWA that purportedly impose various maintenance requirements on Defendants, the few federal regulatory provisions that the Board cites as evidence of the contents of such permits do nothing to extend the reach of any implied duty to the protection of local government entities.

The Board's claims with respect to the CZMA are more non-specific, and even if the Board is correct to state in its complaint that the Act imposes "a litany of duties and obligations expressly designed to minimize the adverse . . . environmental effects associated with" Defendants' activities, those duties do not protect the Board, in light of the Supreme Court's acknowledgment that the Act "has as its main purpose the encouragement and assistance of States in preparing and implementing management programs to preserve, protect, develop and whenever possible restore the resources of the coastal zone of the United States."[47]  The Act also states that one of its policies is to provide for "the management of coastal development to minimize the loss of life and property caused by improper development" in vulnerable areas.[48] But the Board has not pointed to any wrong committed by Defendants that even arguably serves as a basis for liability.

The complaint is equally vague in its references to applicable state regulations, and although the Board now notes that certain state statutes have the declared policy of serving ends similar to those supported by the above federal statutes, there is little evidence that any of the cited provisions create private liability.  The best source of law for the proposition is *Terrebonne Parish*, in which the Fifth Circuit denied summary judgment to defendants who allegedly had breached a private duty to protect canals against breaches

---

[47] *Cal. Coastal Comm'n v. Granite Rock Co.*, 480 U.S. 572, 592 (1987) (quoting S. REP. NO. 92-753, at 1 (1972)).

[48] 16 U.S.C. § 1452(2)(B).

and widening.[49]   But that case was heavily dependent on the relationship between the litigants as parties to a servitude agreement.[50]  That case did not involve a negligence claim and certainly did not purport to extract a general duty of care from state or federal regulatory law.  Additionally, as Defendants point out, *Terrebonne Parish* addressed whether a company that had dredged a canal was liable to the owners of adjacent land for the erosion caused by the widening of the canal;[51] it did not address the indirect effects that the canal had on other land in the region by virtue of its effects on the ecosystem.  The Board thus has failed to establish that Defendants breached a duty of care to it under the facts alleged, and accordingly the district court properly dismissed the negligence claim.

**B**

Under Louisiana law, a claim for strict liability requires that a duty of care was breached, just as a negligence claim does.[52]  There is essentially no difference between the two types of claim under Louisiana law,[53] and to the extent any difference existed during the time period relevant to this lawsuit, that difference was only that recovery on a theory of strict liability before 1996

---

[49] *Terrebonne Parish Sch. Bd. v. Columbia Gulf Transmission Co.*, 290 F.3d 303, 325 (5th Cir. 2002); *see also Barasich v. Columbia Gulf Transmission Co.*, 467 F. Supp. 2d 676, 692 (E.D. La. 2006) (holding that oil and gas companies owed no duty, in the absence of a contractual relationship, to protect landowners from "hurricane damage from storm surge allegedly magnified by coastal erosion caused by" dredging).

[50] *Terrebonne Parish*, 290 F.3d at 313-19.

[51] *Id.* at 308-09.

[52] *See Oster v. Dep't of Transp. & Dev.*, 582 So. 2d 1285, 1288 (La. 1991) ("In essence, the only difference between the negligence theory of recovery and the strict liability theory of recovery is that the plaintiff need not prove the defendant was aware of the existence of the 'defect' under a strict liability theory.").

[53] *Burmaster v. Plaquemines Parish Gov't*, 982 So. 2d 795, 799 n.1 (La. 2008) ("[T]he Legislature [has] effectively eliminated strict liability . . . turning it into a negligence claim." (quoting *Lasyone v. Kan. City S. R.R.*, 786 So. 2d 682, 689 n.9 (La. 2001))).

No. 15-30162

did not require that the defendant had knowledge of its breach of duty.[54] Because the Board has not stated a claim that Defendants owed it a duty of care, its strict liability claim fails along with its negligence claim.

**C**

The complaint alleges that the lands dredged by Defendants constitute "dominant estates" under the Louisiana Civil Code that carry a natural servitude of drain over the "servient estates" owned by the Board, because "water naturally flows" from Defendants' property to the Board's property.[55] It further alleges that "Defendants have rendered the natural servitude of drain more burdensome in violation of Louisiana Civil Code article 656."[56] The district court dismissed the claim on the ground that there is no basis in law for "finding that a natural servitude of drain may exist between non-adjacent estates with respect to coastal storm surge."

The Board argues that this conclusion was incorrect, noting that Louisiana Civil Code article 648 provides that "[n]either contiguity nor proximity of the two estates is necessary for the existence of a . . . servitude. It suffices that the two estates be so located as to allow one to derive some benefit from the charge on the other." The Board points to the allegations in its complaint that state that Defendants' actions have "directly altered and continue to alter the natural course, flow, and volume of water" from Defendants' lands to coastal lands. Defendants respond that the Board's

---

[54] LA. CIV. CODE art. 2317.1 (noting that a strict liability claim requires "a showing that [defendant] knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.").

[55] *See id.* art. 655 ("An estate situated below is bound to receive the surface waters that flow naturally from an estate situated above unless an act of man has created the flow.").

[56] *See id.* art. 656 ("The owner of the servient estate may not do anything to prevent the flow of the water. The owner of the dominant estate may not do anything to render the servitude more burdensome.").

19

allegations do not amount to a claim that Defendants' property is "situated above" the Board's property, as would be required for the existence of a servitude of drain under Louisiana Civil Code Article 655. Moreover, even though the complaint need not allege that the properties are adjacent or near to each other, Defendants point out that there need at least be some allegation that the properties are "close enough that surface water naturally flows from one to another." Even more problematic, Defendants note, is the fact that "storm surge is not surface water," and thus the fact that the Board is most concerned with damage caused by storms and hurricane-related flooding belies its claim that damage is being caused by the flow of water onto its property from some other particular property.

The explanation of the natural servitude claim contained in the complaint does little more than recite the legal requirements of such a claim. It does not name or describe the location of any of the relevant properties, and it does not explain the properties' relation to each other, other than by way of reciting the circumstances of any natural servitude claim. It does not specify which properties constitute the servient and dominant estates, and it therefore cannot allege that any particular property receives naturally flowing surface waters from any other. The Board says that Exhibits B through G to its claim exhibit a "wealth of specificity" on these questions, but the exhibits merely comprise a map indicating the location of the levee districts of the Southeast Louisiana Flood Protection Authority; the names and serial numbers of wells operated by Defendants; descriptions of the locations of wells subject to Defendants' dredging permits; and descriptions of the locations subject to Defendants' right-of-way permits. Because the Board does not argue that every single one of the hundreds of listed locations constitutes a dominant estate, it must intend only to allege that some of those locations are dominant estates. However, it has not made such an allegation. Another possibility is

No. 15-30162

that its argument is that Defendants' actions have altered the flow of water into certain bodies of water, which in turn poses a storm surge risk to the lands the Board oversees. But this would hardly constitute "[a]n estate situated below . . . receiv[ing] the *surface waters* that flow naturally from an estate situated above,"[57] and thus the district court properly dismissed the servitude of drain claim.

## D

Below and here, the parties analyzed both the public and private nuisance claims as arising under Louisiana Civil Code article 667, which provides that "[a]lthough a proprietor may do with his estate whatever he pleases, still he cannot make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him."[58] For actions accruing after 1996, such proprietor "is answerable for damages only upon a showing that he knew or, in the exercise of reasonable care, should have known that his works would cause damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care."[59] The district court held that the Board's claims brought under this statute fail because the Board did not sufficiently allege in its complaint that it is a "neighbor" of any of Defendants' property. The Fifth Circuit has noted that to bring an action under Article 667, "[a] plaintiff must have some interest in an immovable near the defendant-proprietor's immovable."[60]

The lack of specificity that plagues the Board's servitude claim also makes its nuisance claim little more than a restatement of Louisiana law. The

---

[57] *Id.* art. 655 (emphasis added).

[58] *Id.* art. 667.

[59] *Id.*

[60] *Roberts v. Cardinal Servs., Inc.*, 266 F.3d 368, 386 (5th Cir. 2001) (emphasis removed).

No. 15-30162

complaint states generally that Defendants have "dredged a network of canals to access oil and gas wells," and that this and other oil and gas activity have damaged Louisiana's coast. Although the Board is correct to point out that "there is no rule of law compelling 'neighbor' to be interpreted as requiring a certain physical adjacency or proximity,"[61] the Fifth Circuit has established that a complaint nonetheless must establish *some* degree of propinquity, so as to substantiate the allegation that activity on one property has caused damage on another.[62] The Board is thus incorrect to interpret the relevant law to require nothing more than a "causal nexus" between the offending property and the damage done, and in the absence of allegations that the relevant properties were near to each other, the Board has not stated a claim for nuisance.

\*   \*   \*

For the foregoing reasons, the district court's dismissal of the Board's claims is AFFIRMED.

---

*See id.* at 385 ("To be a 'neighbor' one need not be an adjoining landowner . . . 'it suffices that they [the lands] be sufficiently near, for one to derive benefit from the servitude on the other.'" (quoting Ferdinand Fairfax Stone, *Tort Doctrine in Louisiana: The Obligations of Neighborhood*, 40 TUL. L. REV. 701, 711 (1966))).

[62] *Id.* at 387 ("To show that he is a 'neighbor,' and thus legally entitled . . . to maintain [a nuisance] action, a plaintiff must show some type of ownership interest in immovable property *near* that of the proprietor." (emphasis added)); *see also TS & C Invs., LLC v. Beusa Energy, Inc.*, 637 F. Supp. 2d 370, 383 (W.D. La. 2009) (dismissing class action nuisance claim because "plaintiffs have not demonstrated whose property is physically adjacent, closely adjacent or remote from the well site"); *In re Katrina Canal Breaches Consol. Litig.*, 647 F. Supp. 2d 644, 734 (E.D. La. 2009), *rev'd on other grounds*, 696 F.3d 436 (5th Cir. 2012) ("Although there is a paucity of guidance in the law as to the proximity required so as to be a 'neighbor' for purposes of [a nuisance claim], the Court finds that [three miles] is too attenuated for these plaintiffs to be so considered.").